ATTORNEY FOR APPELLANT
R. Patrick Magrath
Madison, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Stephen R. Creason
Ryan D. Johanningsmeier
Deputy Attorneys General
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 78S05-1407-CR-460

DANIEL LEE PIERCE,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Switzerland County Circuit Court, No. 78C01-1201-FA-3
The Honorable W. Gregory Coy, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 78A05-1305-CR-211

**May 12, 2015**

**Massa, Justice.**

Daniel Pierce appeals his convictions for molesting his three young granddaughters, arguing he was entitled to separate trials on the allegations of each individual victim. We are asked to decide whether his offenses were joined not only for being "of the same or similar character" but also because they were based "on a series of acts connected together" under Indiana Code section 35-34-1-9(a)(2). Because we find Pierce's abuse of girls in his care was sufficiently

connected, we hold he is not entitled to new and separate trials. We affirm Pierce's convictions, and we remand only for the purpose of resentencing on one count.

**Facts and Procedural History**

In November 2011, a caregiver discovered seven-year-old K.P. naked in a closet with her three-year-old half-brother. She was taken to the Child Advocacy Center, and during a forensic interview, K.P. indicated her grandfather, Daniel Pierce, had molested her. K.P. revealed Pierce would kiss her on her mouth and touch her "front private" with his hand. Tr. at 48–49. He also tried to use his mouth on her front private, but she "got away from him." Tr. at 64. More than once, Pierce showed her "bad stuff" with naked people doing "nasty stuff" on his computer. Tr. at 53–54. K.P. saw him touch his penis with his hand. He tried to get her to touch his penis, getting "mad" and saying he would give her a dollar, but she "never listened to him." Tr. at 64. Pierce also joined her in the bathtub or shower.

Based on K.P.'s allegations, Detective Kip Main began a criminal investigation and interviewed Pierce's two step-granddaughters, V.H. and B.H., as well as his great niece, A.R. Twelve-year-old V.H. regularly spent the night at Pierce's house, usually by herself. One of those nights, she fell asleep and awoke to Pierce on top of her, "rubbing [her] breasts and [her] vagina area"; despite her attempts to push him off, "he just kept going on with it." Tr. at 94. And on more than one occasion, he placed his mouth on her vagina over her underwear. She would sometimes wear a piece of red lingerie when Pierce would touch her. V.H. also saw Pierce "play" with his penis until "white stuff" came out, which he would put in a cup. Tr. at 97. Thirteen-year-old B.H. would stay over at Pierce's house about twice a month. Once, while she was watching television on the bed, he laid down next to her and "rubbed [her] back and [her] stomach and [her] boobs," first over B.H.'s shirt and then underneath it. Tr. at 73–74. Finally, fourteen-year-old A.R. said Pierce would hug her from behind and cup her breasts for five or ten seconds. He also had her sit between his legs so he could rub her stomach while they watched a movie. When Pierce drove her home after a visit, he told her a story about his penis coming out of his pants.

2

Pierce's wife, Lori, is paralyzed and requires care in their home. Several of Lori's caretakers observed Pierce interact with the girls in ways they did not think were appropriate. Taffy Scudder noticed Pierce would have the girls sit in his lap, hug them, and "pat them on the tush," but he would push away the boys. Tr. at 86–87. While cleaning, Barbara Stout found a box in Pierce's closet that contained a printout of a pornography site called "Barely 18" showing very young girls performing oral sex, and she found nightgowns with the straps tied to fit the girls. Holly Taylor saw V.H. come out of Pierce's bedroom wearing red, see-through lingerie. She also found pornography in Pierce's nightstand. When Brittany McGowand once walked into Pierce's bedroom, K.P. jumped up from laying in his lap with "this look on her face like she was in the wrong." Tr. at 146. Brittany, too, found pornography in Pierce's nightstand. On two occasions, Melody Reese found Pierce and K.P. in the bathroom while one or both of them were in the shower.

A month after K.P.'s interview at the Child Advocacy Center, Pierce was admitted to a mental health facility, apparently due to stress over the allegations against him. From the facility, he contacted Lori and asked her to remove his computers from the home. Lori's caretaker Melody overheard Pierce's request and made arrangements for the computers to be delivered to law enforcement. The internet history on Pierce's computer showed visits to several pornographic websites with "an overwhelming theme of young girls in compromising positions and videos related to that nature of girls." Tr. at 242. Some of the domain names visited included "PappaFuckMe.com, FirstTimeWithDaddy.com, FuckMeDaddy.org, [and] TrickyOldTeacher.com." Tr. at 245.

The State charged Pierce with ten counts: three of child molesting as a Class A felony (Counts 1[1] and 9, naming V.H. as the victim, and Count 10, naming K.P. as the victim), five of child molesting as a Class C felony (Count 2, naming V.H. as the victim, Count 3, naming K.P. as the victim, Count 6, naming A.R. as the victim, and Counts 7 and 8, naming B.H. as the victim),

---

[1] The State successfully moved to dismiss Count 1 with prejudice before trial.

and two of child solicitation as a Class D felony (Count 4, naming V.H. as the victim, and Count 5, naming K.P. as the victim).  Pierce moved to sever the charges, but the trial court denied that motion.

At trial, B.H. testified that Pierce showed her a movie "a long time ago" with "really nasty stuff," including "people [] having sex and stuff," although she did not make that allegation in the course of the investigation.  Tr. at 80–81.  B.H. said she had reported the incident to her stepmom, who didn't believe B.H. because a search of Pierce's house revealed nothing.  On cross-examination, B.H. admitted she *falsely denied* watching pornography with Pierce when the woman at the Child Advocacy Center asked her about "dirty movies."  Tr. at 82.  B.H. explained she had lied then because she was afraid she would "be in trouble" if she ever said "anything like that again."  Tr. at 82.  Based on that statement, Pierce's counsel requested permission to make an offer to prove prior allegations, arguing "it has to do with credibility."  Tr. at 82.  But the trial court denied that request.  Pierce's counsel then confronted B.H. with her statement to Detective Main, to whom she had denied ever making prior allegations; B.H. admitted she had lied to the officer, but insisted her trial testimony was the truth:

> Q:  So today now you say that there was something else even though what I had asked you was "isn't it true that Officer Main said that you had made allegations before" and you said "no"?
>
> A:  Yeah but under oath I might as well tell the truth.

Tr. at 83.

At the close of the State's case, the State consented to dismissing Count 10.  The jury convicted Pierce of all remaining counts except Count 6, the only charge that named as A.R. victim.  The trial court sentenced Pierce to thirty years (six suspended) for Count 9, four years (one suspended) for each of Counts 2, 3, 7, and 8, and eighteen months (six suspended) for each of Counts 4 and 5.  The sentences for Counts 2, 4, and 9 were to run concurrently to each other, as were the sentences for Counts 7 and 8 and Counts 3 and 5.  But the sentences for each victim were

to run consecutive to each other, such that Pierce's aggregate sentence was thirty-eight years (eight suspended). The trial court also determined Pierce was a credit restricted felon.

Pierce appealed his convictions. He raised several issues, including a claim the trial court erred by denying his motion for severance. In an unpublished opinion, a divided panel of our Court of Appeals reversed Pierce's convictions and remanded for new—and separate—trials. Pierce v. State, No. 78A05-1305-CR-211, slip op. at 11, 3 N.E.3d 1087 (Ind. Ct. App. 2014) (table). It concluded Pierce's actions lacked a distinctive pattern showing he must be the perpetrator; the offenses were joined merely because they were of the "same or similar character," so Pierce was entitled to severance under Indiana Code section 35-34-1-11(a). Id. at 7, 10. The majority also considered and resolved several evidentiary issues it believed were "likely to recur on remand." Id. at 11. It held the trial court erred in denying Pierce the opportunity to make an offer of proof during his cross-examination of B.H., id. at 12–13; the trial court abused its discretion in admitting the domain names under Indiana Evidence Rule 404(b), id. at 14–15; and the trial court properly admitted witness testimony about pornography because it supported K.P.'s allegation that Pierce showed her pornography, id. at 15. Judge Baker concurred in part, agreeing for the most part with the disposition of the evidentiary issues,[2] and dissented in part, disagreeing with the severance determination. Id. at 17 (Baker, J., concurring in part and dissenting in part). He believed joinder was not based solely on the offenses being of the same or similar character under § 35-34-1-9(a)(1), but instead the crimes were connected as part of a single plan to victimize children over whom Pierce had control under § 35-34-1-9(a)(2). Id. at 17–18.

---

[2] Judge Baker only disagreed with the majority's ruling regarding the website names: he believed the names were not propensity evidence but bolstered victim testimony, in the same way the admissible testimony about pornography did. Pierce, slip op. at 19 (Baker, J., concurring in part and dissenting in part).

We granted the State's petition to transfer, thereby vacating the opinion below. Pierce v. State, 11 N.E.3d 923 (Ind. 2014) (table); Ind. Appellate Rule 58(A).

## Standard of Review

The degree of deference owed to a trial court's ruling on a motion for severance depends on the basis for joinder. Where the offenses have been joined *solely* because they are of the same or similar character, a defendant is entitled to severance as a matter of right. Ind. Code § 35-34-1-11(a) (2008). The trial court thus has no discretion to deny such a motion, and we will review its decision de novo. Jackson v. State, 938 N.E.2d 29, 36 (Ind. Ct. App. 2010). But where the offenses have been joined because the defendant's underlying acts are connected together, we review the trial court's decision for an abuse of discretion. Craig v. State, 730 N.E.2d 1262, 1265 (Ind. 2000).[3]

In deciding whether to admit or exclude evidence, we trust trial courts to exercise sound discretion, and we will reverse such a decision only if we believe the court abused its discretion, meaning its decision is clearly against the logic and effect of the facts in the record. Blount v. State, 22 N.E.3d 559, 564 (Ind. 2014). We consider only evidence that is either favorable to the

---

[3] Pierce does not present any argument, however, that—even if he was not entitled to severance as a matter of right—the trial court abused its discretion by denying severance under the second half of Indiana Code section 35-34-1-11(a) ("In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering: (1) the number of offenses charged; (2) the complexity of the evidence to be offered; and (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense."). Our review is therefore limited to whether Pierce had an absolute right to separate trials for each victim. Booker v. State, 790 N.E.2d 491, 494 (Ind. Ct. App. 2003).

6

ruling or unrefuted and favorable to the defendant. Reaves v. State, 586 N.E.2d 847, 857 (Ind. 1992).

Although we find no Indiana precedent establishing a standard of review for claims of insufficient evidence to support finding the defendant a credit restricted felon, we believe it makes sense to apply the same standard of review we apply to claims of insufficient evidence to support finding the defendant an habitual offender. See Harmer v. State, 455 N.E.2d 1139, 1141 (Ind. 1983). Accordingly, we consider this claim as we would any sufficiency claim. We neither reweigh the evidence nor reevaluate the witnesses' credibility; rather, we view the evidence in the light most favorable to the verdict, and we will affirm that verdict unless we cannot find substantial evidence of probative value to support it. Woods v. State, 939 N.E.2d 676, 677 (Ind. Ct. App. 2010), trans. denied, 950 N.E.2d 1197 (Ind. 2011).

We review questions of law, including interpretation of a sentencing statute, de novo. Sloan v. State, 947 N.E.2d 917, 920 (Ind. 2011). When the statutory language is clear and unambiguous, we give effect to its plain and ordinary meaning. Id. at 922. We strive to interpret a statute consistently with the intent of the enacting legislature, insofar as we can discern it. Walczak v. Labor Works–Ft. Wayne LLC, 983 N.E.2d 1146, 1154 (Ind. 2013).

## I.       Pierce Was Not Entitled to Severance.

Pierce argues he was entitled to a separate trial for each complaining witness pursuant to Indiana Code section 35-34-1-11(a) and thus the trial court erred by denying his motion to sever the charges against him. Under Indiana law:

> Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:
>
> (1) are of the same or similar character, even if not part of a single scheme or plan; or

7

(2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Ind. Code § 35-34-1-9(a) (2008). But "whenever two (2) or more offenses have been joined for trial in the same indictment or information *solely* on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses." Ind. Code § 35-34-1-11(a) (emphasis added). In other words, the defendant is not entitled to severance as of right if subsection (9)(a)(2) is met.

Subsection (9)(a)(1) refers to the nature of the charged offenses; subsection (9)(a)(2) refers to the operative facts underlying those charges. These two subsections are not coextensive: offenses that are of the same or similar character may be premised on totally unrelated circumstances and evidence. See 5 Wayne R. LaFave et al., Criminal Procedure § 17.1(b), at 7 (3d ed. 2007) ("Under a provision allowing joinder of offenses 'of the same or similar character,' it is permissible to join together several instances of the same crime, such as bank robbery, though they were committed by the defendant at distinct times and places and not as part of a single scheme."). For example, although a defendant may be charged with multiple burglaries (the same statutory offense), if the burglaries are factually distinct in terms of their timing, victims, method of entry, transport vehicle, and types of items taken, they fit squarely under subsection (9)(a)(1) but not (9)(a)(2), and severance is available as a matter of right. Maymon v. State, 870 N.E.2d 523, 526–28 (Ind. Ct. App.), clarified on reh'g, 875 N.E.2d 375 (Ind. Ct. App. 2007). In some instances, of course, crimes that are of the same or similar character may also be based a series of connected acts. See, e.g., Jameison v. State, 268 Ind. 599, 601, 377 N.E.2d 404, 406 (1978) ("In the case at bar the burglaries were of service stations on I-74 in Shelby County. In both entry was gained by breaking a window and radios were stolen. Thus the crimes charged undoubtedly constituted a series of connected acts."), abrogated on other grounds, Mitchell v. State, 535 N.E.2d 498 (Ind. 1989).

To determine whether offenses warrant joinder under subsection (9)(a)(2), we ask whether the operative facts establish a pattern of activity beyond mere satisfaction of the statutory elements. It is well-settled that a common *modus operandi* and motive can sufficiently link crimes committed

8

on different victims. Ben-Yisrayl v. State, 690 N.E.2d 1141, 1145 (Ind. 1997). In Craig v. State, the defendant molested two young girls in a strikingly similar way, by asking them to take a "taste test," covering their eyes with tape, inserting his penis into their mouths, and instructing them to suck on it. 730 N.E.2d at 1264–65. And his common motive—"to satisfy [his] sexual desires"— further tied the crimes. Id. at 1265. Because "[those] similarities [were] sufficient to establish that the molestation of each victim was the handiwork of the same person," the defendant had no absolute right to severance. Id.

But establishing the defendant's unique method of committing the crimes is not the exclusive way of showing his acts are connected together. Offenses can also be linked by a defendant's efforts to take advantage of his special relationship with the victims. E.g., Turnpaugh v. State, 521 N.E.2d 690, 692 (Ind. 1988) (finding child molestation charges were connected together where the victims were two young sisters who were overnight guests of the defendant); Booker v. State, 790 N.E.2d 491, 495 (Ind. Ct. App. 2003) (finding child molestation charges were connected together where the defendant was hired to care for the two young victims). Our Court of Appeals found such a connection where a Child Protective Services caseworker met two teenage boys through his work. Heinzman v. State, 895 N.E.2d 716, 719 (Ind. Ct. App. 2008). The defendant forced one of the boys to perform oral sex, and he inappropriately touched the other, resulting in various sex offenses. Id. He had no right to separate trials because the offenses were joined on the basis that he "abused his position as a caseworker to perpetuate his child molesting scheme." Id. at 721.

A common relationship between the defendant and the victims may even result in an interconnected police investigation into the crimes, producing overlapping evidence. Blanchard v. State, 802 N.E.2d 14, 25 (Ind. Ct. App. 2004) (finding crimes were connected where the death of one of defendant's sons was discovered during the investigation into the neglect of the other). In Philson v. State, for instance, the defendant was charged with various offenses for molesting his younger brother in a bathroom and raping his older sister in a closet. 899 N.E.2d 14, 16 (Ind. Ct. App. 2008). Although the crimes were committed in different ways against different victims, they were connected together because both were "against his siblings in the same house over the same

9

period, 2005–2006" and the "allegation with respect to the rapes of [his sister] surfaced in the course of the investigation into the molestations of [his brother]." Id. at 17.

We find the incidents here share much more than their criminal category. Pierce wasn't charged with four unconnected child molestations; they were connected by his victims, his method, and his motive. Just like the caretaker in Booker and the caseworker in Heinzman, Pierce exploited his position of a trusted grandfather or great uncle by molesting young female family members in his care. The investigation into allegations made by K.P. in her interview led police to identify additional victims. Indeed, much of the evidence overlaps, as the various caretakers testified to their observations of Pierce's inappropriate behavior toward the girls. And Pierce's method was consistent. He invited each granddaughter to spend the night at his home, when no other children would be present. He touched all four girls' breasts or vaginas with his hands, attempting to use his mouth on the vaginas of the two youngest girls. Regarding his motive, as in Craig, Pierce's activity toward all four girls was driven by his aim to fulfill his sexual desires.

We decline to require separate trials as of right where the defendant committed the same crime, in substantially the same way, against similar victims. Because Pierce's criminal acts were sufficiently connected together, he was not entitled to severance.

## II.    None of the Evidentiary Issues Raised by Pierce Entitle Him to a New Trial.

Pierce contends his trial was unfair because the trial court improperly decided two evidentiary issues. First, he alleges the trial court should have granted his request to make an offer of proof regarding B.H.'s prior false allegations of molestation. Second, he argues the trial court should have sustained his objection when the State introduced evidence of pornography discovered in the forensic examination of his computer under Indiana Evidence Rules 404(b) and 702. Despite Pierce's failure to satisfy Indiana Appellate Rule 46, thereby hindering our review, we address the merits of his arguments and determine none entitle him to a new trial.

**A. Any Error in Excluding Pierce's Proffered Impeachment Testimony Was Harmless.**

Pierce claims the trial court abused its discretion by not permitting him to cross-examine B.H. about her prior allegations and by denying him the opportunity to preserve her testimony in the record through an offer of proof. The State counters Pierce waived this issue for our review by failing to cite the portion of the record in which he claims B.H. opened the door to the impeachment evidence. In the alternative, it argues any error was harmless because the jury already had enough information demonstrating B.H.'s testimony was not particularly credible.

"The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on." Ind. Appellate Rule 46(A)(8)(a). And specifically, "if the admissibility of evidence is in dispute, citation shall be made to the pages of the Transcript where the evidence was identified, offered, and received or rejected." Ind. Appellate Rule 46(A)(8)(d). A litigant who fails to support his arguments with appropriate citations to legal authority and record evidence waives those arguments for our review. See City of Indianapolis v. Buschman, 988 N.E.2d 791, 795 (Ind. 2013) (finding a party's argument waived for non-compliance with Rule 46). But whenever possible, "we prefer to resolve cases on the merits" instead of on procedural grounds like waiver. Roberts v. Cmty. Hospitals of Indiana, Inc., 897 N.E.2d 458, 469 (Ind. 2008). Thus, unless we find a party's "non-compliance with the rule sufficiently substantial to impede our consideration of the issue raised," we will address the merits of his claim. Guardiola v. State, 268 Ind. 404, 406, 375 N.E.2d 1105, 1107 (1978) (quoting Davis v. State, 265 Ind. 476, 478, 355 N.E.2d 836, 838 (1976)).

Here, Pierce's argument on this issue comprises a single paragraph of his Appellant's Brief, and that paragraph is utterly devoid of citations to anything at all. Pierce spills slightly more ink on the subject in his Reply Brief and adds citations to the record, but still cites no legal authority in support of his claim of error. His non-compliance with Rule 46 hampers our review of that claim, and we could therefore find it waived if we chose. Nevertheless, in light of our preference for resolving cases on their merits, we elect to consider the substance of Pierce's argument.

11

Both the Federal Constitution and our Indiana Constitution guarantee a defendant's right to confront the witnesses against him. U.S. Const. amend. VI; Ind. Const. art. 1, § 13. This right is not absolute; it is subject to reasonable limitations, which we trust our trial judges to impose. McCarthy v. State, 749 N.E.2d 528, 533 (Ind. 2001). The exercise of that discretion, however, must be consistent with due process. Id. at 533–36 (finding error, although not reversible, in denying defendant the opportunity to cross-examine a witness about an event that may have motivated her to favor the prosecution). To aid the trial court—and the reviewing appellate court—in determining the appropriate scope of cross-examination, a party will often present an offer of proof. Littler v. State, 871 N.E.2d 276, 278 n.2 (Ind. 2007). "While a trial court may exercise reasonable discretion in determining the timing and extent of such a motion, the court should very rarely completely deny a party's request to make an offer of proof, and then only upon clear abuse by the requesting party." Id.

Pierce sought to present an offer of proof, relevant to B.H.'s credibility, based on her statement that she declined to report being shown pornography before trial because "like they were saying to me that 'if I was ever say something like again, you're going to be in trouble.'" Tr. at 82. As a threshold matter, the trial court erred in completely denying Pierce the opportunity to make that offer of proof; his line of questioning reasonably related to B.H.'s credibility, and there is no evidence he abused the procedural tool. We note, however, although Pierce argues he was deprived of the opportunity to show "B.H. had made false accusations," Appellant's Reply Br. at 3, a closer look at her testimony shows she did not make a prior *false allegation* of sexual abuse but rather a prior *false denial* of sexual abuse. In fact, on the stand, B.H. insisted her prior allegation, Pierce showed her video pornography, was true. What she admitted was only that, during the investigation, she lied by denying she saw pornography when she really did. She did so out of fear of "getting in trouble," because her stepmom did not believe her.

Even assuming—without deciding—the trial court improperly limited Pierce's cross-examination of B.H., we find any error was harmless. Violations of the right to cross-examine a witness are subject to harmless error analysis. Smith v. State, 721 N.E.2d 213, 219 (Ind. 1999). We will not reverse a conviction for an error that does not affect the substantial rights of the defendant. Thomas v. State, 774 N.E.2d 33, 36 (Ind. 2002). "Where the wrongfully

excluded testimony is merely cumulative of other evidence presented, its exclusion is harmless error." Sylvester v. State, 698 N.E.2d 1126, 1130 (Ind. 1998).  Here the jury heard enough evidence to enable it to weigh B.H.'s credibility.  Indeed, B.H. admitted she lied to Officer Main during the investigation and admitted her statements at trial were inconsistent.  Defense counsel highlighted concerns about B.H.'s credibility in closing:

> Her first interview she went to CAC and said nothing happened.  In fact, her allegations don't come until a month or so later when Officer Main has to convince her that something happened.  He admitted to having the conversation.  She admitted to having the conversation.  He spent quite a bit of time telling her "something happened to you, I know something happened to you, people have told me something happened to you, you need to tell me, something happened to you."  Very suggestive and inconsistent because, of course, in the first place, nothing happened.

Tr. at 310–11.

Because we find evidence of B.H.'s prior allegations, if wrongfully excluded, had little to no probable impact on the jury, the exclusion was harmless.

## B. The Trial Court Did Not Err by Admitting the Evidence of Pornography and Pornographic Domain Names.

Pierce claims the trial court abused its discretion by admitting evidence that individuals, other than the victims, observed pornography in Pierce's possession, and by admitting two investigating officers' testimony regarding pornography on Pierce's computer.  Although we find Pierce's Appellant's Brief again falls short of what Rule 46 requires, in his Reply Brief he directs us to two places in the record as forming the basis for his objections.  First, during the forensic examiner's testimony, defense counsel objected to the report of Pierce's computer "on the basis of a couple of reasons.  One is that I believe it is 404(b) for him.  The other thing is that . . . I'm not sure that you can say that it's a scientifically accurate report . . . ."  Tr. at 204.  Second, when the State asked Officer Main to give examples of the "concerning" websites included in the report,

defense counsel objected "that nobody can say how accurate this report is and so I don't feel that he would be able to testify to what's in a report that's not accurate, cannot be proved to be accurate." Tr. at 242. He cites no objection, and we see none, to any of the caretakers' testimony that they found pornography in Pierce's room nor to their descriptions of what they saw depicted in those images.[4] We thus limit our review to whether the forensic report was admitted in error pursuant to Indiana Evidence Rules 404(b) and 702(b).

Evidence of a prior wrongful act is not admissible if its sole apparent purpose is to show the defendant acted in conformity with that character. Ind. Evidence Rule 404(b); Wilson v. State, 931 N.E.2d 914, 919–20 (Ind. Ct. App. 2010). But such evidence may be admissible "for other purposes," provided it survives Rule 403 balancing. Halliburton v. State, 1 N.E.3d 670, 681–82 (Ind. 2013). Here, testimony that a forensic analysis revealed pornography on Pierce's computer was not offered to prove Pierce's character; it supported the young victims' testimony that Pierce exposed them to pornography, and the probative value of that evidence is not outweighed by any danger of unfair prejudice. The prejudice side of the scale may tip slightly under the weight of specific domain names. Yet, on these facts, we find the domain names admissible as well, especially in light of the caretakers' descriptions of child pornography, which were already admitted into evidence without objection: Barbara saw "very young girls demonstrating how to perform oral sex," tr. at 112, printed from a website called "Barely 18," tr. at 118; Holly saw "a blond girl wearing white lingerie sitting on a stool with her legs open," tr. at 120; and Brittany saw images "of how to give a guy oral sex," tr. at 148.

---

[4] We acknowledge Pierce cites to one of his motions in limine as grounds for preserving his objection to all evidence of pornography. That Motion, however, refers only to "pornography, and alleged child pornography, found in the history and temporary files of a computer," App. at 276; it makes no mention of witness observations of pornographic images in print. Even if it did, such a motion would not by itself preserve the issue for appellate review. Simmons v. State, 760 N.E.2d 1154, 1158 (Ind. Ct. App. 2002) ("In order to preserve error in the overruling of a pre-trial motion in limine, the appealing party must object to the admission of the evidence at the time it is offered.").

"Expert scientific testimony is admissible only if the court is satisfied that the expert testimony rests upon reliable scientific principles." Ind. Evidence Rule 702(b). Here, there were minor variances in the findings of the two software programs used to create the forensic report of Pierce's internet history; Pierce objected, claiming the forensic examiner could not "prove whether or not it's scientifically accurate." Tr. at 204. We cannot say the trial court abused its discretion in finding the software programs, which are commonly used by law enforcement, were based upon reliable principles. Any dispute as to *exactly* when a website was visited goes to the weight of the evidence not its admissibility, and it is open to attack on cross-examination.

Because we find the pornography evidence to be probative and reliable, we affirm the trial court's admitting it.

### III.    The Defendant Is a Credit Restricted Felon.

Pierce argues the trial court erred by determining he was a credit restricted felon. Our General Assembly has defined "credit restricted felon" in pertinent part as "a person who has been convicted of . . . child molesting involving . . . deviate sexual conduct . . . if:  (A) the offense is committed by a person at least twenty-one (21) years of age; and (B) the victim is less than twelve (12) years of age." Ind. Code § 35-31.5-2-72 (Supp. 2013). Pierce contends this statute cannot apply to him because the State failed to prove V.H. was under twelve years of age at the time of the offense. We disagree.

The trial court entered a judgment of conviction against Pierce for Count 9, Class A felony child molesting involving sexual deviate conduct against V.H. The charging information for Count 9 does not provide V.H.'s age at the time of the charged conduct, but it does state that conduct occurred in "Fall 2009." App. at 163. It also states Pierce was at least 21 years of age at that time. V.H. was born in November of 1999. The laws of mathematics, as we presently understand them, preclude her being more than ten years of age at the time of the charged conduct.

15

But Pierce contends we should disregard the date on the charging information in light of Final Instruction No. 7: "The State is not required to prove that the crime charged was committed during a particular time period alleged in the charging information." App. at 320. Thus, he argues, "it cannot be determined when the jury believed the conduct actually occurred," and there is a possibility the jury believed it occurred after V.H.'s twelfth birthday. Appellant's Br. at 19. That may be true as far as it goes, but it is not relevant.

"At the time of sentencing, a court shall determine whether a person is a credit restricted felon." Ind. Code § 35-38-1-7.8(a) (2012). The court must base that determination upon: "(1) evidence admitted at trial that is relevant to the credit restrict status; (2) evidence introduced at the sentencing hearing; or (3) a factual basis provided as part of a guilty plea." Ind. Code § 35-38-1-7.8(b). As the statute makes plain, it is the trial court, and not the jury, that determines whether a defendant is a credit restricted felon. Here, after hearing all the evidence presented at trial and at the sentencing hearing, the trial court determined that V.H. "was less than twelve (12) years of age at the time the Defendant committed the offenses against her." App. at 363. Therefore, it concluded, "The Defendant is a 'credit restricted felon' as that term is defined in I.C. 35-31.5-2-72." App. at 364.

We believe there is substantial evidence of probative value to support that determination. V.H. testified Pierce molested her in his apartment, but before her twelfth birthday, Pierce and his wife moved from that apartment to a house. Thus, the molestation in the apartment must have occurred when V.H. was less than twelve years of age. The trial court did not err by finding Pierce was a credit restricted felon.

### IV. The Trial Court Erred by Suspending Part of the Defendant's Sentence.

Finally, on cross-appeal, the State argues the trial court violated a state statute when it suspended six years of Pierce's thirty-year sentence for Count 9, Class A felony child molesting of V.H.

16

> If a person is: (1) convicted of child molesting . . . as a Class A felony against a victim less than twelve (12) years of age; and (2) at least 21 years of age; the court may suspend only that part of the sentence that is in excess of thirty (30) years.

Ind. Code § 35-50-2-2(i) (2008). As we discussed above, the trial court found V.H. was less than twelve years of age when Pierce committed the offenses against her, including Count 9, Class A felony child molesting, and Pierce was at least twenty-one years of age at that time. There is substantial evidence of probative value to support those findings. Therefore, Indiana Code section 35-50-2-2(i) applies, the suspension is incompatible with the plain language of that statute, and we must reverse Pierce's sentence for Count 9 and remand to the trial court for resentencing on that count.

## Conclusion

We reverse Pierce's sentence for Count 9, Class A felony child molesting of V.H., and remand for resentencing consistent with our opinion today. In all other respects, we affirm the trial court.

Rush, C.J., and David, J., concur.
Rucker, J., concurs in result with separate opinion in which Dickson, J., concurs.

17

**Rucker, J., concurring in result.**

The question presented, as is the question in most cases involving motions to sever, is whether the offenses were joined "solely" because they are the same or similar in character. Unless the State otherwise concedes the point, it will always protest, "of course not," the offenses were not joined "solely" on that ground. Instead "other factors were present." And so it goes here and the majority agrees. I concur in the result reached by the majority but only because it is not inconsistent with several cases decided by this Court as well as our Court of Appeals. I continue to believe, however, "our traditional approach in resolving claims of severance fails to provide meaningful guidance to either the bench or the bar, and thus lends itself to inconsistent results, even where the facts are very similar." Wells v. State, 983 N.E.2d 132, 137 (Ind. 2013) (Rucker, J., dissenting from the denial of transfer). Employing our "traditional approach"[1] the Court of Appeals in a divided opinion concluded the trial the court erred when it denied Pierce's motion to sever. Pierce v. State, No. 78A05-1305-CR-211, 2014 WL 288998, at *5 (Ind. Ct. App. Jan. 27, 2014), vacated. Employing the same approach this Court has reached the opposite conclusion. Unfortunately we continue down this path of inconsistency. We would be well-advised to provide greater clarity to an area of the law that remains in a state of confusion.

Dickson, J., concurs.

---

[1] This approach entails "look[ing] at the facts in a given case, compar[ing] them to another case, and then reach[ing] a conclusion based on the comparison." Wells, 983 N.E.2d at 136 (citations omitted).