## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 02 2015, 8:56 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jennifer A. Joas
Madison, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Chris Harkins, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | November 2, 2015 <br><br> Court of Appeals Case No. 15A01-1412-CR-553 <br><br> Appeal from the Dearborn Circuit Court <br><br> The Honorable James D. Humphrey, Judge <br><br> Trial Court Cause No. 15C01-1408FC-56 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Chris Harkins was convicted of five counts of forgery, all Class C felonies; two counts of identity deception, both Class D felonies; two counts of credit card fraud, both Class D felonies; and one count of deception, a Class A misdemeanor. The jury also found Harkins to be an habitual offender. Harkins appeals his convictions, raising four issues for our review: 1) whether the trial court erred in denying his motion for severance; 2) whether the trial court erred in denying his motion for continuance; 3) whether the trial court erred in denying his motion to exclude evidence; and 4) whether his convictions violate the prohibition against double jeopardy. Concluding the trial court did not err and Harkins' convictions do not violate the prohibition against double jeopardy, we affirm.

# Facts and Procedural History

[2] In April of 2012, forty-four-year-old Chris Harkins moved in with his parents, James and Cheryl Harkins, at their residence in Bright, Indiana. Over the next seventeen months, Harkins resided in his parents' basement, which housed the couple's personal financial records. During this time, Harkins often fetched the mail for his parents. When Harkins moved out of his parents' residence in September 2013, he maintained access to the home via a garage door opener and house key. Harkins moved to Aurora, Indiana.

[3]     In May 2014, Cheryl received an American Express credit card statement in the mail. The statement reflected a balance due of $37,801.03; the vast majority of the charges were from Best Buy. This came as a surprise to James and Cheryl because they each maintained physical possession of their American Express credit cards and had not incurred the charges. Although Harkins did not have permission to use the credit card, Cheryl suspected her son was responsible. When Cheryl confronted Harkins, he stated he was going to cover the bill. James and Cheryl cancelled their cards and received two new cards.

[4]     Shortly after receiving the new credit cards, the couple discovered additional fraudulent activity on their American Express account. They reported the activity to Deputy Adam Ziegler of the Dearborn County Sheriff's Department. Further, the pair contacted Best Buy and were told the charges stemmed from online purchases. Ultimately, they went to their bank to change their account numbers and to discuss lengthening their second mortgage. The bank discovered the couple's credit score—previously around 800—had dropped significantly to the low 500s. Moreover, the credit report showed fraudulent charges to the couple's Discover and Sears credit cards. The couple never authorized Harkins as a user on the Discover card, but he had somehow been authorized on the account.

[5]     During his investigation into the fraudulent activity, Deputy Ziegler discovered another Sears credit card had been issued through Citibank in James' name. Multiple forged convenience checks were associated with this account. Three checks were paid to the order of Discover. Two checks were paid to the order

of Bright Paralegal Services, a company ostensibly owned by Harkins. All the checks purported to be written by James; James denied writing or signing any of these checks.

[6] Deputy Ziegler then obtained records from Woodforest Bank for two accounts under Harkins' name and a third account for Bright Paralegal Services, for which Harkins was the authorized signor. On the two personal accounts, Harkins named Bright Paralegal Services as his employer. The records indicated deposits made from the forged convenience checks. There were also numerous transactions for Rising Star and Hollywood Casinos.

[7] Additionally, the investigation revealed the address associated with the Sears Citibank account had been changed from James' and Cheryl's home address to Harkins' new address in Aurora. Further, Deputy Ziegler discovered a BestBuy.com account in Cheryl's name. One of the transactions on the account was for the purchase of a PlayStation 4. Cheryl's credit card was used to pay for the device. Cheryl denied ever creating a BestBuy.com account and did not authorize the purchase of the PlayStation. James and Cheryl also discovered multiple pieces of jewelry were missing from their home. Harkins, again without permission, took the items and pawned them at a Quick Cash Pawn Shop.

[8] On June 2, 2014, Deputy Ziegler interviewed Harkins. Harkins admitted to making the purchases from BestBuy.com with Cheryl's credit card. Harkins also admitted to making thousands of dollars of charges on his parents' credit

cards. Despite admitting to "robbing Peter to pay Paul," Harkins claimed he had his parents' permission. Transcript at 137. Additionally, Harkins admitted he liked to gamble and many of the items he purchased with the credit cards were sold for the purpose of gaining gambling funds.

[9] The police then obtained and executed a search warrant at Harkins' residence in Aurora. At the home, the police discovered a BestBuy.com receipt for which Harkins used Cheryl's name and credit card; a Discover credit card offer letter addressed to James at Harkins' address in Aurora; several pieces of mail addressed to Cheryl at her home address; a Sears credit card issued by Citibank; a Discover collection letter addressed to James at Harkins' address in Aurora; and multiple receipts showing purchases using either James' or Cheryl's credit cards.

[10] On August 6, 2014, the State charged Harkins with five counts of forgery (Counts I-V), Class C felonies; two counts of identity deception (Counts VI and VII), Class D felonies; three counts of credit card fraud (Counts VII-X), Class D felonies; receiving stolen property (Count XI), a Class D felony; and deception (Count XII), a Class A misdemeanor. Additionally, the State alleged Harkins was an habitual offender. After the State filed charges, Harkins' sister and ex-wife visited Harkins' residence in Aurora. They discovered a pad of paper where Harkins had been practicing the signatures of other people, including James' signature; bills with James' and Cheryl's names, but with Harkins' address; multiple Best Buy receipts; a copy of Cheryl's driver's license; a copy of Cheryl's debit card; a copy of Cheryl's credit report; mail with information

pertaining to Cheryl's retirement account, but with Harkins' address; and James' and Cheryl's bank and credit card statements.

[11] On August 11, 2014, Harkins filed a motion for speedy trial. The trial court scheduled a jury trial for October 20, but it was later moved to November 3. On October 31, the State filed a motion to amend the charging information, which the trial court granted. Prior to the commencement of trial, Harkins filed a motion to sever the counts, which the trial court denied. On the morning of trial, Harkins filed a motion to continue due to the absence of cell phone records, evidence he considered material. The trial court denied Harkins' motion. After the trial court seated the jury and released them for the evening, but prior to the presentation of any evidence, Harkins moved to exclude evidence—Harkins' Woodforest Bank records—he had just received from the State that afternoon. The trial court took the motion under advisement pending presentation of the evidence at trial. When the State moved to admit the bank records at trial, the trial court denied Harkins' motion to exclude the evidence.

[12] On November 5, the State filed its second motion to amend the charging information, which the trial court granted. Following trial, the jury found Harkins guilty on Counts I-IX and XII. The jury found Harkins not guilty on Count X and was unable to reach a verdict on Count XI. The jury also found Harkins was an habitual offender. The trial court sentenced Harkins to a total of twenty-two years in the Indiana Department of Correction. This appeal ensued.

# Discussion and Decision

## I. Motion for Severance

### A. Standard of Review

Harkins argues the trial court erred in denying his motion to sever. In Indiana, there are two classifications for severance: 1) severance as a matter of right; and 2) severance by trial court discretion. Ind. Code § 35-34-1-11(a). A defendant is entitled to severance, and the trial court has no discretion to deny a motion for severance when the offenses have been joined solely because they are of the same or similar character. *Pierce v. State*, 29 N.E.3d 1258, 1264 (Ind. 2015). Whether a defendant is entitled to severance as a matter of right is reviewed de novo. *Id.* If the defendant is not entitled to severance as of right, whether to sever multiple charges is within the trial court's discretion, and we will only reverse upon a showing of clear error. *Heinzman v. State*, 895 N.E.2d 716, 721 (Ind. Ct. App. 2008), *trans. denied*.

### B. Severance by Right

First, Harkins contends the State joined the charges solely on the grounds they were of the same or similar character. Indiana law provides two or more offenses can be joined "when the offenses: (1) are of the same or similar character, even if not part of a single scheme or plan; or (2) are based on the same conduct or a series of acts connected together or constituting parts of a single scheme or plan." Ind. Code § 35-34-1-9(a). "Whenever two (2) or more offenses have been joined for trial in the same indictment or information solely

on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses." Ind. Code § 35-34-1-11(a). However, if joinder is "based on the same conduct or a series of acts connected together," Ind. Code § 35-34-1-9(a)(2), the defendant is not entitled to severance as of right, *Pierce*, 29 N.E.3d at 1265. Thus, we are tasked with determining whether, under subsection 9(a)(2), Harkins' offenses are based on the same conduct or a series of acts connected together.

[15] "To determine whether offenses warrant joinder under subsection (9)(a)(2), we ask whether the operative facts establish a pattern of activity beyond mere satisfaction of the statutory elements. It is well-settled that a common *modus operandi* and motive can sufficiently link crimes committed on different crimes." *Id.* at 1266. Moreover, "[o]ffenses can also be linked by a defendant's efforts to take advantage of his special relationship with the victims." *Id.*

[16] Here, the State charged Harkins with five counts of forgery, two counts of identity deception, three counts of credit card fraud, and one count of deception. He argues "the crimes were not unique or distinctive enough to qualify as being part of a modus operandi [sic] because the various transactions occurred over nearly a one year period of time at various places and in different manners." Appellant's Brief at 12. Conversely, the State argues, "Harkins committed a series of connected acts against his family, for his actions formed a single scheme to defraud his elderly parents." Brief of Appellee at 14. We agree with the State.

While his parents allowed Harkins to live in their basement, Harkins took advantage of their generosity by gaining access to their personal and financial records. Such information provided Harkins—and only Harkins—the unique and distinct ability to perpetuate check forgery, identity deception, and credit card fraud against his parents on a consistent basis throughout an eleven-month period. *See Heinzman*, 895 N.E.2d at 720 ("'*Modus operandi*' means 'method of working,' and refers to a pattern of criminal behavior so distinctive that separate crimes may be recognized as the work of the same wrongdoer."). Harkins' *modus operandi* is further evidenced by the fact his sole victims were his parents. Moreover, the record indicates a common motive: stealing his parents' money to cover his personal debts and gambling habits. The charged offenses are based on a series of acts significantly connected due to Harkins' common motive, *modus operandi*, and the fact Harkins capitalized on his special relationship with his parents. Because the acts are significantly connected, we conclude Harkins instituted a common scheme to defraud his parents, and therefore he was not entitled to severance as a matter of right.

## C. Discretionary Severance

In the alternative, "Harkins argues that the trial court abused its discretion in not severing his charges in order to promote a fair determination of his case." Appellant's Br. at 9. Indiana law provides:

> [T]he court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:

(1) the number of offenses charged;

(2) the complexity of the evidence to be offered; and

(3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

Ind. Code § 35-34-1-11(a).

[19]  In *Heinzman*, the State charged the defendant "in twenty-nine various counts with at least five offenses, even though there were only two victims." 895 N.E.2d at 721. We agreed with the defendant that "the sheer volume of the charges . . . made it difficult for the jury to distinguish the evidence and apply the law intelligently to each offense." *Id.* at 722 (alteration in original). We affirmed the trial court's denial of severance, however, because the jury found the defendant not guilty on four counts, thereby indicating it was able to distinguish the evidence and apply the law intelligently. *Id.*

[20]  Here, the State charged Harkins with twelve counts related to five separate offenses committed against two victims. Harkins argues the number of charges, combined with the varying offenses, "had to result in a great deal of confusion to the jury based on the number of offenses charged." Appellant's Br. at 14. We would be more inclined to agree had the jury convicted Harkins on all counts. Similar to *Heinzman*, however, the jury found Harkins guilty on ten counts, not guilty on one count, and was unable to reach a verdict on another. Further, the evidence presented at trial was not overtly complex. The evidentiary portion of trial lasted two days and included just six witnesses. Even assuming the evidence was indeed complex, we find it convincing the jury

still distinguished the evidence on the varying counts and applied the law intelligently to each offense. Because the record indicates no clear error, we conclude the trial court did not abuse its discretion in denying Harkins' motion for severance.

## II. Motion for Continuance

Harkins argues the trial court erred in denying his motion for a continuance made on the morning of his jury trial. If a defendant's motion for continuance is based on the absence of material evidence, as Harkins' motion was, and if certain statutory criteria are met, then the defendant is entitled to a continuance as a matter of right. *See* Ind. Code § 35-36-7-1 (requiring, in pertinent part, a defendant file an affidavit for a continuance not later than five days before the commencement of trial); *Gibson v. State*, 2015 WL 5612775, at *3 (Ind. 2015). Harkins did not file an affidavit for a continuance until the morning of trial and therefore was not entitled to a continuance as a matter of right. *See id.*

If a defendant is not entitled to a continuance as a matter of right, "a trial court has wide discretion to deny a motion to continue." *Gibson*, 2015 WL 5612775, at *3. We will only find an abuse of discretion when a defendant shows prejudice as a result of not getting a continuance. *Id.* "To demonstrate such prejudice, a party must make a specific showing as to how the additional time requested would have aided counsel." *Id.* (citation and internal quotation marks omitted). Continuances for the purpose of gaining additional trial

preparation are generally disfavored. *Robinson v. State*, 724 N.E.2d 628, 634 (Ind. Ct. App. 2000), *trans. denied*.

[23] Here, "Harkins argues that the denial of the motion prevented him from presenting exculpatory evidence that was the sole source of his defense." Appellant's Br. at 16. Specifically, he claims cell phone text messages between his parents and himself would show "he had permission to use his parents [sic] credit cards." *Id.* But, according to the record, a miscommunication occurred between Harkins and his counsel. The miscommunication resulted in Harkins not being able to attain the cell phone records prior to the commencement of trial. In denying the motion, the trial court reasoned,

> The Court scheduled this matter at your request, sir, for speedy trial. There were two opportunities—once was last Monday, the other one was last Friday—to raise this issue.
> * * *
> [I]t would not make a whole lot of sense to the Court that I'd have to continue this to obtain records of cell phone text messages that would be on a cell phone, sent by your client, on his cell phone, that is in his possession. Again, the speedy trial request was demanded by Mr. Mr. Harkins [sic]. There were multiple opportunities to raise this before now.

Supplemental Transcript at 14-15.

[24] We agree with the trial court. Harkins had multiple opportunities to raise the issue prior to the commencement of trial; he failed to do so. Moreover, we find his argument unpersuasive. He has failed to show any prejudice from the denial of the continuance. Although he claims he needed his parents' cell

phone records in order to advance his defense theory, he always had access to his own cell phone records, which could also provide the exculpatory evidence he allegedly needed. The trial court did not abuse its discretion.

## III. Motion to Exclude Evidence

[25] Harkins argues the trial court erred by allowing into evidence, over his objection, the Woodforest Bank records. Specifically, Harkins contends the State violated the trial court's discovery order by not providing discovery within thirty days of the order, and therefore the evidence should have been excluded. The State counters Harkins waived the issue by not filing a motion for continuance along with the motion to exclude. We agree with the State.

[26] The trial court's discovery order, dated September 22, required the State to provide to Harkins "any sort of books, papers, documents, photographs, other tangible objects, which the prosecuting attorney intends to use in the hearing or trial or which were obtained from or belong to the accused." Tr. at 51. Moreover, the order required the State to provide discovery within thirty days of the order. It is apparent the State violated the court's discovery order in furnishing Harkins' Woodforest Bank records to him on the first day of trial— November 3. In doing so, the State also violated Indiana Trial Rule 34(C)(2)[1]

---

[1] The rule provides:

> Neither a request nor subpoena to produce or permit as permitted by this rule shall be served upon a non-party until at least fifteen (15) days after the date on which the party intending to serve such request or subpoena serves a copy of the proposed request and subpoena on all other parties. *Provided, however, that if such request or subpoena relates to a matter set for hearing within such*

by failing to serve Harkins with advance notice of the proposed subpoena to Woodforest Bank. Although these discovery violations are no doubt a matter of concern, "the proper remedy for a discovery violation is a continuance." *Warren v. State*, 725 N.E.2d 828, 832 (Ind. 2000). "Failure to alternatively request a continuance upon moving to exclude evidence, where a continuance may be an appropriate remedy, constitutes a waiver of any alleged error pertaining to noncompliance with the court's discovery order." *Id.* Here, Harkins moved to exclude the bank records, but he did not request a continuance. Thus, the issue is waived.

[27] Waiver notwithstanding, Harkins still cannot prevail. "Exclusion of evidence as a remedy for a discovery violation is *only* proper where there is a showing that the State's actions were deliberate or otherwise reprehensible, and this conduct prevented the defendant from receiving a fair trial." *Id.* (emphasis added). On the first day of trial, the State received the bank records, provided the records to Harkins, and Harkins subsequently moved for exclusion. At this point, no party had given opening statements and the jury had already been released for the evening. The trial court took the motion for exclusion under advisement. The trial court did not convene the following day due to a court holiday. When court reconvened, the State moved to admit the Woodforest

*fifteen (15) day period or arises out of a bona fide emergency, such request or subpoena may be served upon a non-party one (1) day after receipt of the proposed request or subpoena by all other parties.*

(Emphasis added.) Although the State argues time was short due to the speedy trial setting, it failed to provide any notice to Harkins prior to subpoenaing records from Woodforest Bank.

Bank records during its case-in-chief. Harkins renewed his motion to exclude. The trial court overruled Harkins' motion and admitted the records into evidence. The trial record indicates Harkins' counsel had time to review the bank records with the State, and the parties redacted the bank records in a satisfactory manner prior to their admission.

[28] We are not persuaded the State's actions were deliberate or reprehensible. Again, we do not condone such discovery violations, but the State learned of the potential evidence just days before trial, immediately issued a subpoena to Woodforest Bank, and provided the records to Harkins as soon as it received them. Moreover, the State asserts its failure to provide Harkins with notice of the subpoena was "inadvertent because both parties were in a rush to prepare for trial and were actively conducting discovery in the two weeks leading up to trial." Br. of Appellee at 24 n.6. Finally, we find it difficult to believe Harkins' contention that the evidence caused an *unfair* surprise. Harkins had knowledge of his personal accounts with Woodforest Bank and had time to review and redact the records prior to the records being admitted. Therefore, even had the issue not been waived, the trial court did not err in denying the motion to exclude.

## IV. Double Jeopardy

[29] Harkins argues his convictions on Count VII, identity deception, and Count VIII, credit card fraud, violate the prohibition against double jeopardy in that the same evidence was used to convict Harkins of both Counts. Article 1,

Section 14 of the Indiana Constitution provides, "No person shall be put in jeopardy twice for the same offense."

> [T]wo or more offenses are the 'same offense' in violation of Article 1, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

*Cross v. State*, 15 N.E.3d 569, 571 (Ind. 2014) (alteration and emphasis in original) (quoting *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999)). We review double jeopardy claims de novo. *Strong v. State*, 29 N.E.3d 760, 766 (Ind. Ct. App. 2015).

[30] Specifically, Harkins contends his Count VII and VIII convictions violate the actual evidence test.[2] In evaluating two convictions under this test:

> [W]e examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts. To find a double jeopardy violation under this test, we must conclude that there is a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

---

[2] Harkins concedes the two statutes "each contain an element or two not shared by the other. Therefore, Harkins does not contend his convictions for these crimes violate the statutory elements test." Appellant's Br. at 22 (citations omitted).

*Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013) (citations and internal quotation marks omitted). The actual evidence test is applied to all the elements of both offenses. *Id.* "'In other words . . . the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense.'" *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002).

[31] Determining whether there is a reasonable possibility the jury used the same evidentiary facts to reach two convictions "requires substantially more than a logical possibility." *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008). Tasked with such a determination, "[w]e evaluate the evidence from the jury's perspective and may consider the charging information, jury instructions, and arguments of counsel." *Garrett*, 992 N.E.2d at 720. Ultimately, if we find the jury "may have latched on to exactly the same facts for both convictions[,]" then a double jeopardy violation is present. *Id.* (citation omitted).

[32] Here, the charges as relayed in the final jury instructions read:

> Count VII [identity deception], states that on or between February, 2014, and April, 2014, in Dearborn County, State of Indiana, Chris E. Harkins did knowingly or intentionally obtain, possess, transfer or use the identifying information of another person, to-wit: Cheryl Harkins, without the other person's consent and with intent to profess to be another person, to-wit: made credit card purchases by using the identity and credit card of Cheryl Harkins.
> * * *
> Count VIII [credit card fraud], states that on or between April 1,

2014, and April 15, 2014, in Dearborn County, State of Indiana, Chris E. Harkins did, with intent to defraud, obtain property, to-wit: made numerous purchases with American Express by using, without the consent, a credit card that was issued to another person, to-wit: Cheryl Harkins.[3]

*Id.* at 698. Additionally, the jury instructions included the statutory definition of each offense. As to Count VII, identity deception, the State had to prove beyond a reasonable doubt: 1) The defendant 2) knowingly or intentionally 3) obtained, possessed, transferred or used the identifying information of Cheryl Harkins 4) without Cheryl Harkins' consent 5) with intent to profess to be Cheryl Harkins. Ind. Code § 35-43-5-3.5. As to Count VIII, credit card fraud, the State had to prove beyond a reasonable doubt: 1) The defendant 2) with intent to defraud 3) obtained property 4) by using a credit card issued to Cheryl Harkins, 5) without Cheryl Harkins' consent. Ind. Code § 35-43-5-4.

[33] The evidence supporting Harkins' conviction on Count VIII was his fraudulent use of Cheryl's American Express and Discover credit cards. Harkins claims the exact evidentiary facts used to convict him on Count VIII were also used to convict him on Count VII. *See* Appellant's Br. at 22 ("[T]he crux of both charges is that Harkins used Cheryl Harkins [sic] American Express credit card . . . ."). We disagree.

---

[3] We note this language is nearly identical to the charging information as read to jury in the preliminary instructions. *See* Appellant's Appendix at 641.

[34]     First, the State made no reference to credit cards when giving its closing argument as to Count VII, focusing instead on Cheryl's identification. Second, the fact Harkins fraudulently used Cheryl's credit card is not the *sole* fact on which the jury could have found Harkins guilty of identity deception. For example, the evidence showed Harkins possessed vast amounts of Cheryl's mail, copies of Cheryl's driver's license and debit card, and Cheryl's credit report. The evidence showed Harkins used Cheryl's identity in creating a BestBuy.com account under her name. The evidence of both acts is sufficient for the jury to conclude Harkins knowingly or intentionally obtained, possessed, transferred or used the identifying information of Cheryl Harkins, without Cheryl Harkins' consent, and with intent to profess to be Cheryl Harkins. *See Sandleben v. State*, 22 N.E.3d 782, 791 (Ind. Ct. App. 2014) ("The fact finder is entitled to infer intent from the surrounding circumstances.") (citation omitted), *trans. denied*.

[35]     Finally, we note it is logically possible for the jury to rely on the fraudulent American Express credit card transactions to convict Harkins on Counts VII, identity deception. Our precedent, however, requires "substantially more than a logical possibility." *Lee,* 892 N.E.2d at 1236. Due to other facts supporting a conviction of identity deception, such possibility is not reasonable in this case. Because it is not a reasonable possibility the jury latched on to exactly the same facts for both convictions, there is no violation of the prohibition against double jeopardy.

# Conclusion

[36] The trial court did not abuse its discretion in denying Harkins' motion for severance, motion to continue, or motion to exclude evidence, and Harkins' convictions on Counts VII and VIII do not constitute double jeopardy. Harkins' convictions are therefore affirmed.

[37] Affirmed.

Vaidik, C.J., and Pyle, J., concur.