## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 25 2019, 9:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Taylor C. Byrley
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joe Bass,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 25, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2304<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Clayton Graham, Judge<br>The Honorable Anne Flannelly, Magistrate<br><br>Trial Court Cause No.<br>49G07-1805-CM-16962 |

**Bradford, Judge.**

# Case Summary

Joe Bass was convicted of Class A misdemeanor battery resulting in bodily injury after he initiated and participated in a physical altercation with his nephew. Bass challenges the sufficiency of the evidence to sustain his conviction, arguing that the State failed to rebut his claim that he acted in self-defense. We affirm.

# Facts and Procedural History

On May 26, 2018, Trelen Whitfield was sitting in his great-grandmother's living room watching television when Bass entered the home. Bass is Whitfield's great-uncle[1] and lived in Whitfield's great-grandmother's home. It appeared to Whitfield that Bass had been drinking. Bass approached Whitfield, "sort of went off on" Whitfield accusing Whitfield of asking him to sell drugs.[2] Tr. p. 8. Bass appeared angry when he approached Whitfield. He "grabbed" Whitfield by the shirt, "pulled [him] up out [of] the chair," and slapped him before pushing Whitfield "up against the wall" and hitting him "two more times." Tr. pp. 8–9. Bass's actions caused Whitfield to feel pain. Whitfield was eventually able to leave the home.

---

[1] While Whitfield refers to Bass as his uncle, the record demonstrates that Bass is actually Whitfield's great-uncle.

[2] Whitfield denies ever asking Bass to sell drugs for him.

[3]     Whitfield's mother Lashawnda Hinton arrived at the home a short time after Whitfield left. Hinton called the police and Indianapolis Metropolitan Police Officer Paul Bellows was dispatched to the home. Bass, however, left the home before Officer Bellows arrived.

[4]     Hinton called police and Officer Bellows was dispatched to the home a second time after Bass returned to the home. When Officer Bellows arrived, Bass was "pacing back and forth in the living room, and he was yelling and screaming." Tr. p. 25. Once Bass calmed down, he admitted "Yes, I put my hands on [Whitfield's] face." Tr. p. 27. At some point, Whitfield returned to the home. Officer Bellows spoke to Bass, Hinton, and Whitfield before placing Bass under arrest.

[5]     On May 27, 2018, the State charged Bass with two counts of Class A misdemeanor battery and one count of Class B misdemeanor disorderly conduct. The trial court conducted a bench trial on August 29, 2018. At trial, Whitfield was asked if at any point he had gotten in Bass's face or made any contact with Bass. Whitfield responded "Never. I never even got up out [of] my seat." Tr. p. 14. Following the conclusion of the State's evidence, the trial court dismissed the battery charge that related to Hinton. The trial continued on the remaining battery and disorderly conduct charges. Bass then testified that he started arguing with Whitfield because Whitfield had "been disrespecting" him. Tr. p. 34. He claimed that during the argument, Whitfield stood up, bumped him, and "started to get in [his] face." Tr. p. 34. He testified that he then "just grabbed [Whitfield] and pushed him out [of his] way

and told him to get away from me." Tr. p. 34. Bass, however, denied striking Whitfield. During closing argument, defense counsel stated the following:

> Your Honor, the State has failed to meet their burden of proving my client's guilt beyond a reasonable doubt. What we have here is a family disagreement that got out of hand. All we have is evidence of battery…. You heard [Bass testify] that he was approached in an aggressive, rude, insolent manner by [Whitfield] and that he responded by using the most intrusive -- less intrusive means necessary. He was inside the house that he lives in with his mother, with her consent, and he simply, with the intent of de-escalating the situation, took him by his collar, after being bumped in the chest, and removed [Whitfield] from the home. You heard testimony that there is no bruising, no marks, no bleeding, no physical evidence…. There simply just isn't enough here to prove my client's guilt, and that's why he should be found not guilty as to Count II, battery resulting in bodily injury, and not guilty of Count III, disorderly conduct. The State has failed to meet their burden of proving either of these beyond a reasonable doubt.

Tr. pp. 37–38.

[6] The trial court found Bass guilty of both Class A misdemeanor battery resulting in bodily injury and Class B misdemeanor disorderly conduct. In making this finding, the trial court explicitly stated that it found "that Trelen Whitfield was credible." Tr. p. 38. The trial court merged the conviction for disorderly conduct into the battery conviction, noting that "the facts used to prove Count III are really so close to the same facts as proving Count II." Tr. p. 39. The trial court sentenced Bass to 365 days in the Marion County Jail, with credit for time served and the remaining portion suspended to probation.

# Discussion and Decision

Bass challenges the sufficiency of the evidence contending that the State failed to rebut his claim of self-defense.[3]

> A valid claim of defense of oneself or another person is legal justification for an otherwise criminal act. In order to prevail on such a claim, the defendant must show that he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. If a defendant is convicted despite his claim of self-defense, this Court will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. In any event, a mutual combatant, whether or not the initial aggressor, must declare an armistice before he or she may claim self-defense. The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. We neither reweigh the evidence nor judge the credibility of witnesses. If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed.

*Wilson v. State*, 770 N.E.2d 799, 800–01 (Ind. 2002) (internal citations omitted).

---

[3] We note that the State asserts that Bass did not argue below that he acted in self-defense and has therefore waived his appellate challenge to the sufficiency of the evidence to rebut his self-defense claim. While Bass did not specifically mention the term "self-defense" during trial, defense counsel argued the elements of a self-defense claim during his closing argument. Given our preference to decide cases on the merits, *Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015) (providing that whenever possible, we prefer to resolve cases on the merits), we find defense counsel's arguments sufficient to avoid waiver.

[8] Bass concedes that he and Whitfield were involved in an altercation and does not challenge the trial court's determination that during this altercation he knowingly or intentionally touched Whitfield in a rude or angry manner and that his actions caused Whitfield to suffer bodily injury, *i.e.*, pain.[4] Bass argues, however, that he acted in self-defense.

[9] According to Bass, he (1) was in a place where he had a right to be, (2) did not provoke or initiate the altercation, and (3) reasonably feared bodily harm. Review of the record reveals, however, that Whitfield testified that Bass was the initial aggressor in the altercation, and the trial court explicitly indicated that it found this testimony to be credible. We therefore conclude that the State sufficiently rebutted Bass's self-defense claim. Bass's argument to the contrary effectively amounts to an invitation to reweigh the evidence, which we will not do. *Id.* at 801.

[10] The judgment of the trial court is affirmed.

Bailey, J., and Brown, J., concur.

---

[4] A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner that results in bodily injury commits Class A misdemeanor battery. *See* Ind. Code § 35-42-2-1(c) & (d). "'Bodily injury' means any impairment of physical condition, including physical pain." Ind. Code § 35-31.5-2-29.