## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 20 2016, 9:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Barbra A. Stooksbury
Howes & Howes, LLP
LaPorte, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Johnny Dutrayl McSwain, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | October 20, 2016 <br><br> Court of Appeals Case No. 46A03-1510-CR-1812 <br><br> Appeal from the LaPorte Superior Court <br><br> The Honorable Michael S. Bergerson, Judge <br><br> Trial Court Cause No. 46D01-1409-MR-264 |

**Baker, Judge.**

[1] Johnny McSwain appeals his convictions for Murder,[1] a Felony; Attempted Murder,[2] a Level 1 Felony; and Conspiracy to Commit Murder,[3] a Level 2 Felony. He argues that the conspiracy charge should have been severed, that there is insufficient evidence supporting his conspiracy conviction, and that his sentence is inappropriate in light of the nature of the offenses and his character. Finding no error in the joinder of charges, that there is sufficient evidence, and that his sentence is not inappropriate, we affirm.

## Facts

[2] On August 15, 2014, Barry Williams and Daniel Mallett were visiting a house in LaPorte. Around 10:30 p.m., they left to go to a gas station.

[3] McSwain, Tyrone Stalling, and Larry Crume, Jr., arrived across the street from the house shortly thereafter. McSwain and Stalling approached the house and knocked on the door. They asked whether Mallet was home, and when told that he had just left, McSwain and Stalling went back across the street.

[4] When Williams and Mallett returned from the store, McSwain, Stalling, and Crume confronted them. McSwain asked, "why you all making it hot over here, we can't make no money." Tr. p. 863. McSwain was accusing them of

---

[1] Ind. Code § 35-50-2-3(a).

[2] Ind. Code § 35-41-5-1(a).

[3] I.C. § 35-41-5-2.

attracting police attention, which made it more difficult to sell drugs. Williams responded, "f*ck you all." *Id.* at 864.

[5] The two sides began preparing to fight, with Williams and Mallett slowly backing away. McSwain then punched Williams in the face, knocking him unconscious. Mallett threw a punch at McSwain and then began running toward the house. Mallett heard McSwain yell, "shoot that n****r." *Id.* at 1207. Crume pulled out a gun that he had been keeping in his hoodie pocket and fired several shots at Mallett. Bullets flying past his head, Mallett was able to get into the house without being hit. Crume then walked over to Williams, who was still lying unconscious on the ground, and shot him in the head. McSwain and Crume fled the scene.

[6] The following day, McSwain bailed his friend, Deanbra Martin, out of the LaPorte County Jail. Martin came to McSwain's house and McSwain relayed the events of the previous day to him. According to Martin, McSwain admitted that "he nod[ded] at Crume and told him to kill" Williams. *Id.* at 1387. McSwain then asked Martin to kill Mallett so that Mallett could not talk to the police. The group began to meet regularly to discuss the best way to kill Mallett. McSwain spoke about getting walkie-talkies, "a low low car,"[4] and handicap license plates to facilitate the attack. *Id.* at 1397.

---

[4] McSwain was referring to an inconspicuous car that would not attract police attention.

On September 12, 2014, Martin was arrested. He signed an agreement to give information regarding Williams's death and to become a confidential informant. Through Martin, police kept track of the plan as it unfolded. McSwain was concerned that "they name was hot in the streets," and so planned to be seen at a Wal-Mart to establish an alibi. *Id.* at 1403-05. On September 19, McSwain gave Martin a .45-caliber gun. Later, McSwain spoke with Martin on the phone and told him that he was at the Wal-Mart. The police went to the Wal-Mart, where they found McSwain and Crume, whom they arrested. While executing a search warrant of McSwain's house, the police found handicap license plates.

A trial was held from June 22 through July 1, 2015. Prior to the trial, McSwain filed several motions, including a request to sever the conspiracy charge, a request that was apparently never ruled upon. The jury found McSwain guilty as charged.[5] After a September 23, 2015, sentencing hearing, the trial court sentenced McSwain to 55 years for murder, 35 years for attempted murder, and 30 years for conspiracy, all to be served consecutively, for an aggregate term of 120 years. McSwain now appeals.

## Discussion and Decision

McSwain has three arguments on appeal, namely, that the trial court should have severed the conspiracy charge from the murder and attempted murder

---

[5] Crume was tried at the same trial and found guilty, but is appealing separately.

charges; that there was insufficient evidence to support the conspiracy conviction; and that his sentence is inappropriate.

# I. Severance of Charges

[10] Regarding the joinder or severance of multiple criminal charges, Indiana law provides the following:

> (a) Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:
>
>> (1) are of the same or similar character, even if not part of a single scheme or plan; or
>>
>> (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Ind. Code § 35-34-1-9. On the other hand, a defendant has a right to the severance of charged offenses "whenever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character . . . ." Ind. Code § 35-34-1-11(a). In such circumstances, we review a trial court's decision de novo. *Pierce v. State*, 29 N.E.3d 1258, 1264 (Ind. 2015). Even where the defendant does not have a right to sever the charged offenses,

> the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that

severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:

(1) the number of offenses charged;

(2) the complexity of the evidence to be offered; and

(3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

I.C. § 35-34-1-11(a). In these circumstances, "where the offenses have been joined because the defendant's underlying acts are connected together," the trial court has broad leeway in ruling on the motion to sever. *Pierce*, 29 N.E.3d at 1264.

[11] McSwain's charged offenses were the following: along with his accomplice, Crume, he attempted to murder Mallett; a moment later, they did murder Williams; and then, over the course of the ensuing weeks, they conspired with a confidential informant to murder Mallett so that he would not talk to the police about their previous two crimes. Given that the first two offenses were committed within moments of each other, and that the third offense was committed to kill the same victim of the attempted murder offense and eliminate a witness to their crimes, we have little difficulty finding that the underlying acts were connected together. *See Smoote v. State*, 708 N.E.2d 1, 3 (Ind. 1999) (finding a proper joinder of offenses where "State's theory . . . was that the defendant killed the victim in order to assure that the victim would not implicate him in the bank robbery").

[12] We turn to whether, despite the underlying acts' connection, the factors listed in subsection -11(a) compelled the trial court to sever the charges. First, McSwain was charged with only three crimes. Second, the evidence before the jury consisted mainly of the testimony of eyewitnesses and a confidential informant, and so was not overly complex. Third, the evidence supporting each offense was distinct to each offense, enabling the jury to come to an intelligent decision regarding each charge. The trial court did not err by finding that none of these three factors required a severance of McSwain's charges.

## II. Sufficiency of the Evidence

[13] McSwain argues that there is insufficient evidence to support his conspiracy to commit murder conviction. He contends that his conviction cannot stand where the main evidence against him is "the testimony of a known Felon and Confidential informant facing a significant penalty for his criminal actions leading up to Johnny's arrest." Appellant's Br. p. 18.

[14] When reviewing the sufficiency of the evidence supporting a conviction, we will neither reweigh the evidence nor assess witness credibility. *Harbert v. State*, 51 N.E.3d 267, 275 (Ind. Ct. App. 2016). We will consider only the evidence supporting the judgment and any reasonable inferences that may be drawn therefrom, and we will affirm if a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

[15] The State was required to prove beyond a reasonable doubt that McSwain conspired to commit the felony of murder. "A person conspires to commit a

felony when, with intent to commit the felony, the person agrees with another person to commit the felony." Ind. Code § 35-41-5-2(a). "The state must allege and prove that either the person or the person with whom he or she agreed performed an overt act in furtherance of the agreement." I.C. § 35-41-5-2(b).

[16] Here, Martin testified that McSwain was party to an agreement to kill Mallett. Moreover, Martin testified that McSwain provided him with a gun, which is an overt act in furtherance of the agreement to kill Mallett. Thus, there was sufficient evidence by which a jury could determine that each element of the conspiracy was established beyond a reasonable doubt. McSwain's argument amounts to a request that we reweigh the evidence and assess the credibility of witnesses—a request that we decline.

## III. The Sentence Is Not Inappropriate

[17] McSwain argues that his sentence is inappropriate. Indiana Appellate Rule 7(B) provides, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The principal role of such review is to attempt to leaven the outliers, but not to achieve a perceived "correct" sentence. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference. *Id.* at 1222. We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts,

or length of the sentence on any individual count." *Id.* at 1225. The defendant bears the burden of showing us that his sentence is inappropriate. *Kennedy v. State*, 934 N.E.2d 779, 788 (Ind. Ct. App. 2010).

[18] McSwain faced between forty-five and sixty-five years for his murder conviction, with the advisory sentence being fifty-five years. I.C. § 35-50-2-3(a). Attempted murder is a Level 1 felony, which carries a sentence of between twenty and fifty years, with the advisory sentence being thirty years. I.C. § 35-41-5-1(a); Ind. Code § 35-50-2-4. A conspiracy to commit murder that does not result in the death of a person is a Level 2 felony, which carries a sentence of between ten and thirty years, with the advisory sentence being seventeen and one-half years. I.C. § 35-41-5-2; I.C. § 35-50-2-4.5. McSwain received the advisory sentence for murder, the advisory sentence for attempted murder, and the maximum sentence for conspiracy to commit murder, and his sentences were ordered to run consecutively. This amounts to an aggregate sentence of 120 years.

[19] Turning to the nature of McSwain's offenses, he and an accomplice came to the house where their victims were staying with the intent to start a confrontation over illegal drugs. Although McSwain argues that "he did not direct the bullets to hit" Mallett, appellant's br. p. 16, the evidence shows that he yelled to Crume, "shoot that n****r." Tr. p. 1207. McSwain was then an accomplice to the cold-blooded killing of Williams, who was lying unconscious on the ground because McSwain had knocked him out. One witness testified that McSwain admitted that he nodded his head toward the unconscious Williams, telling

Crume to shoot him. And although McSwain argues that this was only "a situation which got quickly out of hand," appellant's br. p. 16, the evidence shows that he spent the following month calmly deliberating and planning the murder of Mallett, whom he and Crume had unsuccessfully attempted to murder in the first place. While a 120-year sentence might have been inappropriate for a single, unplanned incident, we find that the month-long conspiracy to commit a second murder reflects a wanton disregard for the value of human life. And as our Supreme Court has explained, regarding the purpose of consecutive sentences, "consecutive sentences seem necessary to vindicate the fact that there were separate harms and separate acts against more than one person." *Serrino v. State*, 798 N.E.2d 852, 857 (Ind. 2003). McSwain has not carried his burden of showing us that the nature of his offense renders his 120-year sentence inappropriate.

[20] Turning to McSwain's character, we find a lengthy criminal history. McSwain has juvenile adjudications for battery, battery with injury, disorderly conduct, burglary, and theft. He has adult convictions for criminal recklessness and possession of marijuana. Although we note that McSwain did apologize to Williams's family for their loss, tr. p. 1847, McSwain's character does not persuade us to modify his sentence. We find that McSwain's sentence is not inappropriate in light of the nature of the offenses and his character.

[21] The judgment of the trial court is affirmed.

Vaidik, C.J., and Najam, J., concur.