## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 31 2017, 9:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark A. Delgado
Monticello, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Newell
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of M.A. (Minor Child) and

K.S. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

July 31, 2017

Court of Appeals Case No.
91A02-1702-JT-352

Appeal from the White Circuit Court

The Honorable Robert W. Thacker, Judge

Trial Court Cause No.
91C01-1607-JT-14

**Vaidik, Chief Judge.**

# Case Summary

K.S. appeals the termination of her parental rights to her son, arguing that the evidence is insufficient to support the trial court's decision. We affirm.

# Facts and Procedural History

K.S. ("Mother") and T.A. ("Father") are the biological parents of M.A. ("Child"), who was born in July 2003. In May 2014, Father, who had primary custody of Child at the time, suffered his second heroin overdose in just over a month.[1] The Department of Child Services (DCS) removed Child from Father's home and placed him with his paternal grandfather. DCS did not place Child with Mother "due to allegations of drug abuse by her." Appellant's App. Vol. II p. 85. According to DCS's initial report, "[Child] also disclosed that his mother has 'smoked drugs' within the past couple of weeks, however, it is unknown what substance she was smoking and she said she would stop." *Id.* at 82. Also, Father reported methamphetamine use by Mother. Tr. p. 80.

After removing Child, DCS filed a petition alleging that he was a child in need of services (CHINS). Mother and Father admitted the allegations in the petition, and on July 8, 2014, the trial court entered a dispositional order. The dispositional order required Mother to, among other things, abstain from illegal

---

[1] Father said that the second incident involved passing out from drinking too much, but he acknowledged using heroin the same day, and a DCS representative testified that Father had "experienced another overdose[.]" Tr. p. 69.

drug use and submit to drug screens. Unfortunately, Mother could not escape her drug addiction.

[4] Mother tested positive for methamphetamine and/or amphetamine in September 2014, December 2014, January 2015, August 2015, and November 2015. She also refused to submit to drug screens multiple times. She successfully completed a sixty-day residential treatment program between November 2015 and January 2016, but she failed to participate in relapse prevention, and she failed drug screens in February, March, and April of 2016. Then, in May, she was charged with possession of methamphetamine and possession of paraphernalia.

[5] Mother's drug use led to other problems in her efforts to reunify with Child. Early in the CHINS case, she was seeing Child as many as four days a week, including some overnights, but that time was reduced after she tested positive for meth in September 2014. She failed to maintain consistent employment, and she had trouble keeping the utilities on at her house "throughout the case." Tr. p. 81. She was hard to reach, missed multiple case-management appointments, and missed visitations with Child. At least once Mother failed a drug screen while Child was visiting her, and Child found drug paraphernalia in Mother's home while visiting her. Mother also admitted to being "involved with someone who was abusing drugs" at one point during the case. *Id.* at 53.

[6]     On July 18, 2016, DCS filed a petition to terminate Mother's parental rights.[2] The termination hearing was held five months later, in December. At the hearing, DCS presented evidence that Mother had tested positive for meth on October 12 and October 27, and Mother admitted that she had used meth even more recently. Mother acknowledged that she had been addicted to meth for almost nine years. Mother also testified that she had started a new job (part-time) just two weeks before the hearing, that she had no license and no operating vehicle, that her meth and paraphernalia charges were still pending, and that her electricity, water, and gas had just recently been restarted after having been disconnected for four months.

[7]     The family case manager testified about Mother's inconsistency with services and her general lack of progress. While she acknowledged that at the time of the hearing Mother was working, had a place to live, and appeared to have some bond with Child, she confirmed that DCS was still pursuing termination. *Id*. at 98. Child's guardian ad litem, who had been involved in the case since the initial removal, testified that Mother "doesn't seem to have the ability to have the discipline to stay away from substances that have caused her to be unavailable for her child" and that "terminating [Mother's] rights is what's in [Child's] best interest[.]" *Id*. at 112, 114. A month after the hearing, the trial

---

[2] Father had signed a consent to adoption in April 2016.

court issued its findings of fact, conclusions of law, and a judgment terminating Mother's parental rights.

[8] Mother now appeals.

# Discussion and Decision

[9] Mother contends that DCS did not present sufficient evidence to support the trial court's decision to terminate her parental rights. We first note that, notwithstanding the highly fact-sensitive nature of Mother's appeal, the argument section of her brief does not include a single citation to her appendix or the record on appeal. Indiana Appellate Rule 46(A)(8)(a) provides, in part, that each of the appellant's contentions "must be supported by citations to . . . the Appendix or parts of the Record on Appeal relied on[.]" Failure to comply with this rule constitutes waiver of the unsupported contentions. *Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015) ("A litigant who fails to support his arguments with appropriate citations to legal authority and record evidence waives those arguments for our review."); *City of Indianapolis v. Buschman*, 988 N.E.2d 791, 795 (Ind. 2013).

[10] There is another significant problem with Mother's argument. Trial courts are required to enter findings of fact that support the entry of their conclusions in termination cases, *see* Ind. Code § 31-35-2-8(c), and Mother acknowledges that our role on appeal is limited to determining whether the evidence supports the findings and whether the findings support the conclusions, *see* Appellant's Br.

pp. 8-9 (citing *In re G.Y.*, 904 N.E.2d 1257, 1260 (Ind. 2009), *reh'g denied*). Having done so, however, Mother does not challenge any of the trial court's fifty-six findings of fact, nor does she dispute that those findings support the trial court's conclusions.

[11] We could affirm the trial court's judgment on either of these two grounds. Nonetheless, we have reviewed the evidence, and it is plainly sufficient to support the trial court's decision.

[12] When DCS asks a court to terminate a parent's rights, it bears the significant burden of presenting clear and convincing evidence that such an outcome is appropriate. *In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014); *see also* Ind. Code §§ 31-34-12-2, 31-37-14-2. But once the trial court concludes that DCS has carried that burden, our review on appeal is highly deferential. *In re E.M.*, 4 N.E.3d at 642. We consider only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence, and we will not reweigh the evidence or attempt to judge the credibility of witnesses. *Id.* We will reverse a termination judgment only if it is clearly erroneous. *Id.*

[13] Here, the trial court found clear and convincing evidence to support four conclusions under the termination statute, Indiana Code section 31-35-2-4(b)(2): (1) "The child has been removed from the parent at least six (6) months under a dispositional decree"; (2) "There is a reasonable probability that the conditions which resulted in child's removal and continued placement outside the home will not be remedied by Mother"; (3) "Termination of parental rights

is in child's best interests"; and (4) "There is a satisfactory plan for the care and treatment of child, that being adoption." Appellant's App. Vol. II pp. 39-40. Mother does not challenge the first conclusion or the last.

[14] Her first argument is that "[t]he State failed to meet their burden by showing that Mother was provided an adequate statutory opportunity to provide care to [Child] without the coercive intervention of the Department of Child services, thereby prohibiting Mother from showing that she was ready and able to provide proper care to [Child]." Appellant's Br. p. 7. She contends that "there was no prejudice to the State or [Child] by continuing to assist [Mother] in the transition to becoming the sole custodial parent of the minor child." *Id.* at 11. In short, Mother argues that DCS should have given her more time to stabilize—specifically, to get off meth—before moving to terminate her rights. We read this as a claim that the evidence does not support the trial court's conclusion that there is a reasonable probability that the reason Child was not placed with Mother upon removal from Father will not be remedied. We disagree.

[15] The reason Child was not placed with Mother was Mother's meth use, and there is abundant evidence that this problem will not be remedied. Mother tested positive for meth numerous times while the CHINS case was pending and twice more after DCS filed for termination. She spent sixty days in treatment but then failed to complete relapse prevention and continued using meth. At the time of the termination hearing, Mother was facing charges of

possession of meth and paraphernalia.[3] Thirty months had passed since the CHINS case started, and Mother had showed little to no progress in overcoming her meth addiction or the instability that went with it. The trial court did not err, clearly or otherwise, by concluding that there is a reasonable probability that the reason Child was not placed with Mother will not be remedied.[4]

[16] Mother spends much of her brief arguing that the evidence is insufficient to support the trial court's conclusion that termination is in Child's best interests. But the guardian ad litem and the family case manager both testified in support of termination. We have repeatedly held that such testimony, when coupled with clear and convincing evidence that the conditions that resulted in removal or the reasons for placement outside of the home will not be remedied, is sufficient to support a trial court's conclusion that termination is in a child's best interests. *See*, *e.g., In re S.E.*, 15 N.E.3d 37, 48 (Ind. Ct. App. 2014), *trans. denied*; *In re A.D.S.*, 987 N.E.2d 1150, 1158-59 (Ind. Ct. App. 2013), *trans. denied*; *In re I.A.*, 903 N.E.3d 146, 155-56 (Ind. Ct. App. 2009); *In re A.I.*, 825

---

[3] We are aware that Mother was eventually found not guilty on the meth-possession charge (but guilty of possessing paraphernalia). This does not alter our analysis, especially in light of the undisputed fact that Mother used meth while those charges were pending.

[4] The record makes clear that Mother's meth use was the central issue in this case, but one would not gather that from reading her brief, which makes only a handful of general references to the topic. We strongly urge Mother's attorney, who represented Mother throughout the trial-court proceedings, to be more forthcoming in future appeals.

N.E.2d 798, 811 (Ind. Ct. App. 2005), *trans. denied*.  Therefore, we cannot say that the trial court erred in this regard.

[17]    Affirmed.

Bailey, J., and Robb, J., concur.