## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 09 2019, 10:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Gregory Bowes
Greg Bowes Legal Services, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Cora J. Robinson,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

December 9, 2019

Court of Appeals Case No.
19A-CR-1149

Appeal from the Brown Circuit Court

The Honorable Judith A. Stewart, Judge

The Honorable Frank M. Nardi, Magistrate

Trial Court Cause No.
07C01-1601-CM-14

**Crone, Judge.**

## Case Summary

Following a bench trial, the court found Cora J. Robinson guilty of class B misdemeanor criminal recklessness and two other offenses. Robinson argues that her criminal recklessness conviction is not supported by sufficient evidence and that the trial court improperly ordered her to pay restitution as a condition of probation without inquiring as to her ability to pay. We affirm.

## Facts and Procedural History[1]

The facts most favorable to the trial court's judgment are as follows. Robinson and Robert Guerra lived together and had a son in approximately 2013. Robinson moved out of their home in late 2014, but she and Guerra continued their relationship. Around 10:30 p.m. on February 8, 2015, Guerra parked his Chevrolet Blazer approximately five feet from the front of a one-story home that Amy Ripberger shared with the owner, Marvin Murphy, who had been away from home since October 2014. Guerra knew both Murphy and Ripberger. Guerra knocked on the front door, and Ripberger answered. Guerra asked if he could borrow her phone to call his sister. Ripberger gave Guerra her phone, and he sat in a chair in the living room approximately ten to

---

[1] Indiana Appellate Rule 46(A)(6) provides in pertinent part that an appellant's statement of facts "shall describe the facts relevant to the issues presented for review …." "The facts shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed." Ind. Appellate Rule 46(A)(6)(b). Robinson's three-sentence statement of facts contains a single sentence relevant to the sufficiency issue: "With regard to the charge of Criminal Recklessness, the State presented evidence that Ms. Robinson drove to the home of an acquaintance of her son's father and rammed two cars with a truck." Appellant's Br. at 5. This fails to comply with either the letter or the spirit of Appellate Rule 46, given the fact-sensitive nature of the issue presented.

twelve feet from the front door to make the call. Ripberger left the room to do some housework, and when she returned, Guerra was asleep in the chair. She was unable to wake him, so she went to sleep in her bedroom at 12:30 a.m.

[3] Shortly before 7:00 a.m., when it was still dark, Ripberger awoke to a crashing sound and felt her house shaking. She went into the living room, where Guerra was still sitting in the chair. Ripberger asked what was going on. Guerra told her, "[D]on't go out there, she'll kill you." Tr. Vol. 1 at 33. Ripberger heard a diesel engine revving and a vehicle accelerating. As she opened the front door, she "could see headlights through the front window" and hear the sound "getting closer to the front door." *Id*. She then heard "a vehicular crash.… [l]ike crunching metal" and a "thud" of a vehicle "hit[ting] the house …." *Id*. at 34. Ripberger then watched a pickup truck repeatedly back up approximately 100 feet to the road, accelerate to approximately "30 miles an hour," and strike the rear of her Chrysler sedan, which was parked next to Guerra's Blazer. *Id*. at 34, 35. The truck rebounded from each impact and "would end up in different locations" in the front yard. *Id*. at 35. The truck pushed the Chrysler "into the porch and the house[,]" and the impact "snapped" one of the posts supporting the porch roof. *Id*. at 36, 37. At one point, the truck crashed into the Chrysler and rebounded into the Blazer.

[4] After ramming the truck into the Chrysler "six or seven times," the driver parked in the front yard and started "banging on the [front] door, yelling Bobby get your ass out here. I hope you're happy. You need to come on. You need to come on. You need to get out here." *Id*. at 39, 42. Ripberger recognized the

driver as Robinson and called 911. Ripberger shouted, "I've called the cops, and they're on their way." *Id.* at 42. Robinson "yelled, f'ing cop callers" and got back in the truck and drove away. *Id.*

[5] The State charged Robinson with class A misdemeanor criminal mischief, class B misdemeanor criminal recklessness, and class B misdemeanor leaving the scene of the accident. After a bench trial, at which Robinson was represented by appointed counsel, the court found Robinson guilty as charged. At the sentencing hearing, at which Robinson was represented by private counsel, Ripberger testified that her Chrysler had been totaled, that it had been worth $4412, and that she was asking only $2500 in restitution. She also testified that it had cost $4980 to repair Murphy's home. Robinson's counsel stated,

> I have the permission of [Robinson's] father, who posted the bond, to immediately apply the $2,500.00 cash he posted to the victims. I have an opportunity if her liberty is preserved, for her to make a transaction on a vehicle that might generate $3,000.00. As a matter of fact, many months before I got involved in this situation, I believe [Murphy] and her had talked about a truck that she might have for sale. They might be able to work out a deal to chew down on [Murphy's] $4,980.00 restitution. And really, um, and about the tail of restitution, whatever we can't get paid very, very shortly, [Robinson's father] will help her.… [H]e's good for it. These people are going to get their justice.… I need [Robinson] at liberty to help Dad scrape this money together to bite off this restitution as soon as possible.

*Id.* at 178-79.

[6]     The trial court imposed concurrent suspended sentences of one year for the class A misdemeanor and 180 days for the class B misdemeanors, with sixty days of electronically monitored home detention and 305 days of probation. Regarding restitution, which the trial court imposed as a condition of probation, the court stated,

> I will … order [Robinson] to pay restitution to Amy Ripberger in the amount of $2,500.00 and restitution to Marvin Murphy in the amount of $4,980.00. I will order that the bonds be applied in equal amounts to pay those restitutions. And Ms. Robinson, I think it'd be great if she could come up with some lump sum payments. I'll find that she has the ability to pay. And I will order at the very least that she pay 10% of any net income per week towards the restitution. And that will be applied in equal amounts to the amounts owed to Amy Ripberger and Marvin Murphy. Those amounts will be entered as judgments.

*Id*. at 180-81. Robinson now appeals.

## Discussion and Decision

## Section 1 – Robinson's criminal recklessness conviction is supported by sufficient evidence.

[7]     Robinson challenges the sufficiency of the evidence supporting her criminal recklessness conviction. When reviewing a sufficiency claim, we consider only the probative evidence and the reasonable inferences supporting the judgment. *Keith v. State*, 127 N.E.3d 1221, 1228 (Ind. Ct. App. 2019). "It is not our role as an appellate court to assess witness credibility or to weigh the evidence." *Id*.

"We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id*.

[8] To convict Robinson of class B misdemeanor criminal recklessness, the State was required to prove beyond a reasonable doubt that she recklessly, knowingly, or intentionally performed an act that created a substantial risk of bodily injury to another person. Ind. Code § 35-42-2-2(a). A substantial risk is one "that has 'substance or actual existence.'" *Boushehry v. State*, 648 N.E.2d 1174, 1177 (Ind. Ct. App. 1995) (quoting *Elliott v. State*, 560 N.E.2d 1266, 1267 (Ind. Ct. App. 1990)). "'Bodily injury' means any impairment of physical condition, including physical pain." Ind. Code § 35-31.5-2-29.

[9] Robinson acknowledges that "ramming two cars with a truck is an act" but argues that "[w]hat is missing in this case is the proof that the act created a substantial risk of bodily injury." Appellant's Br. at 6. We disagree. The probative evidence and reasonable inferences most favorable to the trial court's judgment establish that Robinson knew that both Guerra and Ripberger were inside the home and likely asleep when she used her pickup truck to repeatedly ram Ripberger's car into the home with enough force to snap one of the posts supporting the porch roof. Robinson insists that "[t]he point of impact was not close enough to where the two occupants were sleeping to prove a 'substantial risk of bodily injury.'" *Id*. at 7. We agree with the State that "[s]imply because [Robinson] did not know the exact location of the occupants inside the house does not mean that her actions did not create a substantial risk of bodily

injury." Appellee's Br. at 13.[2] A reasonable trier of fact could have found that Robinson's actions did create such a risk.

[10] Robinson further argues that the State failed to prove that she acted "knowingly, intentionally, or recklessly." Appellant's Br. at 6.[3] The State responds, "It would strain credulity to believe that [Robinson] did not intend, or was unaware, that she was creating such a dangerous situation when the evidence showed that [she] consciously rammed [Ripberger's] car six or seven times against the side of an occupied house." Appellee's Br. at 12. Again, we agree with the State. Accordingly, we affirm Robinson's criminal recklessness conviction.

## Section 2 – Robinson has failed to establish any error regarding the restitution order.

[11] Robinson also challenges the restitution order. Indiana Code Section 35-38-2-2.3(a)(6) provides that a trial court may require a person to

---

[2] The State asserts, "The evidence supports the reasonable conclusion that [Robinson's] act created a situation where someone could have been seriously injured—either [Robinson] herself or the occupants of the home." Appellee's Br. at 13. We note that the criminal recklessness statute imposes liability only for creating a substantial risk of bodily injury to another person. Ind. Code § 35-42-2-2.

[3] Indiana Code Section 35-41-2-2 provides in pertinent part,

> (a) A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so.
>
> (b) A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.
>
> (c) A person engages in conduct "recklessly" if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.

[m]ake restitution or reparation to the victim of the crime for damage or injury that was sustained by the victim. When restitution or reparation is a condition of probation, the court shall fix the amount, which may not exceed an amount the person can or will be able to pay, and shall fix the manner of performance.

Where neither the defendant nor the State has provided any information or testimony regarding the defendant's ability to pay, the trial court must make the necessary inquiry to prevent an indigent defendant from being imprisoned because of a probation violation based on a failure to pay restitution. *Bell v. State*, 59 N.E.3d 959, 963-64 (Ind. 2016).[4] "[O]nce a defendant presents or the court elicits from defendant information demonstrating an inability to pay, the burden properly shifts to the State to rebut the evidence of defendant's inability to pay." *Id*. at 964. "[W]ithout any evidence that the defendant can or will be able to pay, a restitution order cannot stand." *Id*.

[12]     The gist of Robinson's argument seems to be that no information was presented regarding her ability to pay and therefore the restitution order cannot stand. We disagree. As indicated above, Robinson's counsel conceded that Robinson would be able to pay restitution, and the trial court so found. Accordingly, we affirm the restitution order.

---

[4] The State points out that although Robinson was represented by appointed counsel at trial, she retained private counsel before the sentencing hearing.

[13]     Affirmed.

Baker, J., and Kirsch, J., concur.